UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Eugene A. Divney, | ) | CASE NO. 1:15 CV 2358 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Penske Automotive Group, Inc., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 21). This is an employment discrimination case. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Eugene A. Divney filed his Complaint in the Cuyahoga County Common Pleas Court against defendant Penske Automotive Group, Inc. Defendant removed to this Court on the basis of diversity and federal question.

Plaintiff was hired by Stoddard Imported Cars, now known as PAG Mentor A1, in 1995 as a Service Manager at the car dealership now known as Audi Mentor. He continued to

1

be employed in that position following defendant's acquisition of Stoddard in 2011. According to plaintiff, due to worsening neck, back, shoulder, and foot conditions, plaintiff asked his supervisor in September 2014 for a different chair and desk but was denied such. Also at that time, plaintiff asked his supervisor if he could cut back his hours to 47 or 48 a week from 55 hours a week.  His supervisor suggested he "semi-retire," but plaintiff insisted that he did not want to retire as he needed to continue working full-time because he needed the money. In December 2014, plaintiff was "forced" to accept the position of Service Advisor which involved a severe cut in pay. (pltf. depo.)

On February 2, 2015, due to his worsening neck and spine condition, plaintiff arrived at work wearing a cervical collar. Plaintiff testified that the new Service Manager, Dale Hodge, approached him around noon and told him to go home because wearing the collar was "against the Penske image" and customers would perceive him as being a handicapped person.  Plaintiff went home and around 3:00, Hodge called him.  Hodge asked how plaintiff was doing and told him, "You can't work there with a collar."  Hodge told plaintiff he should apply for government disability.  (pltf. depo. 88-90)  Hodge denied telling plaintiff to go home because he was wearing the collar. (Hodge depo. 38)

On February 4, 2015, plaintiff emailed Farrah Board (Primerano), a human resources representative, stating:

> On Monday February 2, 2015, I arrived at work wearing a neck brace to immobilize my neck due to pain and deteriorating spine. That afternoon, Dale Hodge told me to go home because I was not presenting the desired "Penske Image" to customers by wearing a neck brace and was perceived as a "handicap."  He would be contacting me in a few days to check on my recovery.
>
> I informed Dale my doctors had advised me my condition would not be improving, I have excessive deterioration of the neck and spine.

2

> Later that afternoon I received a call from Dale suggesting that I apply for disability. Since I am being released of my responsibilities I have applied for unemployment compensation.

(Doc. 21 Ex. B) One-half hour later, Hodge sent an email to Ty Whiting, Ray Sminchak, Michael Burns, and Farrah Board stating:

> Gentleman, Ladies,
>
> Gene Divney's health has deteriorated to a point that I would like to offer or suggest if I may the creation of a job that he could have here at Audi Mentor and if permitted what would I be allowed to pay him for this service, this cost could be split within the group.
>
> The job details would include, mainly "lead porter" type duties such as instructing the porters on the daily tasks that the store may need (snow plow, leaves, grass, cleaning) as well as assisting service with appts, test drives and the occasional write up, assisting with locating and assigning long range drivers for new/used cars. I'm hoping to make this a 40 hour a week job.
>
> Please let me know if this is something I can do so I can offer him a job that he would be currently able to do without risking his health.

(Doc. 21 Ex. C) Whiting was General Manager of Audi Mentor. (Whiting depo. 5) According to plaintiff, he received a telephone call from Whiting that day wherein Whiting stated that "he talked to Dale Hodge about working out something. He didn't know what yet. He would have to discuss it more with Hodge and Farrah about a possibility of doing something." (pltf. depo. 95; *Id.* 103-104, 113) At that point, nobody told plaintiff that he had been fired. (*Id.* 104) However, plaintiff testified that the next day, Hodge called him to offer him a retirement party. (*Id.*) Defendant submits plaintiff's phone records which do not show that he received a phone call from the dealership or Hodge on February 5. (Doc. 27 Ex.1)

> By email of February 18, 2015, Hodge informed Whiting, Burns, and Board:
>
> I'm sorry to say Gene called me today and stated he no longer wanted employment at Audi of Mentor, I asked him if he was sure about that decision and suggested he take a

3

>few days to consider this, he replied with "NO", he said he wasn't making any money and no longer wants to return. I'm not sure what I should do next if anything.

(Doc. 21 Ex. D) Plaintiff denied ever making such a call to Hodge. (pltf. depo. 107-108) The phone records show that plaintiff did call Hodge on February 18. (Doc. 27 Ex.1)

Plaintiff's Complaint alleges that he was terminated on February 2, 2015, and sets forth four claims: Count One- Age Discrimination in Employment (ADEA). Count Two- Age Discrimination under the Ohio Revised Code. Count Three- Handicap/Disability Discrimination under the Ohio Revised Code. Count Four Retaliation under the Ohio Revised Code.

This matter is before the Court upon defendant's Motion for Summary Judgment.

**<u>Standard of Review</u>**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

>[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence"

4

to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

It is not disputed that all four claims asserted in plaintiff's Complaint (age discrimination in violation of federal and state law, and disability discrimination and retaliation under Ohio law) require that defendant be plaintiff's employer. Defendant asserts that all claims must be dismissed because Penske Automotive Group was not plaintiff's employer. For the following reasons, this Court agrees.

5

Plaintiff does not dispute that the named defendant, Penske Automotive Group, is the parent corporation of PAG Mentor A1, Inc. dba Audi Mentor, an entity that has not been named in the Complaint. In discovery, defendant stated that it was not plaintiff's employer:

> **Interrogatory No. 2**
>
> Please state the precise date upon which Plaintiff commenced his employment with Defendant, the job title the Plaintiff held when he commenced his employment with Defendant, the actual name of the dealership where Plaintiff was employed when he commenced his employment with Defendant and Defendant's compensation package at the time he commenced his employment with Defendant.
>
> **Answer**
>
> Objection: This Interrogatory seeks information which is neither relevant nor reasonable calculated to the discovery of admissible evidence. Further, this Interrogatory is vague and ambiguous. Defendant's compensation package is overly vague. Defendant employed individuals in multiple positions. Many of these positions were subject to different compensation. Further, to the extent that Plaintiff is seeking Mr. Divney's compensation package at the time he began his employment, this information is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Defendant responds as follows:
>
> Plaintiff began working for Stoddard Imported Cars, Inc. now known as PAG Mentor Al, Inc. on August 7, 1995. He re-applied November 6, 2011 after Stoddard Imported Cars, Inc. was acquired by Penske Automotive Group. Plaintiff was employed as a Service Manager. The name of the dealership is presently known as Audi Mentor. Plaintiff has never been employed by Defendant.

(Doc. 21 Ex. A. No. 2).  Plaintiff's W-2s identified his employer's name as PAG Mentor A1, Inc. dba Audi Mentor. (Doc. 21 Ex. E). Federal and state cases recognize that a "parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan  v. U.S. Steel Corporation,* 478 F.3d 718 (6th Cir. 2007) (citations omitted); *Starner v. Guardian Industries*, 143 Ohio App.3d 461 (10th Dist. 2001). While "in extraordinary cases" courts will pierce the corporate veil and disregard the corporate entity,

6

treating the parent corporation and its subsidiary as a single entity, *Id.,* plaintiff does not present evidence to support disregarding the corporate form and piercing the corporate veil. In his brief opposing defendant's motion, plaintiff states that defendant "cites a grand total of two cases for" the legal proposition that the parent corporation is not liable for the acts of the subsidiary. (Doc. 25 at 9) Yet, plaintiff does not dispute this law. Rather, plaintiff contends that this case involves the "single employer doctrine." Plaintiff has never alleged that Penske Automotive Group and PAG Mentor A1, Inc. dba Audi Mentor are a single employer. Regardless, plaintiff has not presented evidence to establish that it has met the four part test for finding that these two entities are a single employer.

Under the single-employer doctrine, "two nominally independent entities are so interrelated that all of the employees of one are attributed to the other." *Reed v. Gulf Coast Enterprises*, 2016 WL 3963187 (W.D. Ky. July 21, 2016) (citing *Swallows v. Barnes & Noble Book Stores, Inc*., 128 F.3d 990 (6th Cir. 1997)). To determine whether to treat two entities as a single employer subject to liability under the ADEA and/or the ADA, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 994.

As to the first factor, interrelation of operations, plaintiff points to Farrah Board's (Primerano) deposition testimony that "our personnel files are actually held in our payroll office." (Board depo. 14). Additionally, when asked whether the payroll administrator position is "an area position or just for Audi Mentor," Board testified, "No. For all of

7

Cleveland." She also testified that the payroll administrator's office is at Mercedes-Benz in Bedford. (*Id.* 38-39) Based on this testimony, plaintiff concludes that the two entities maintain common records. Plaintiff also asserts that the two entities share a common email system.

The Court agrees with defendant that plaintiffs fails to establish this factor as there is no evidence of common records based upon the fact that payroll records are maintained in a central location. Nor does plaintiff show that the two entities shared budgets, bank accounts, or employees. In fact, while plaintiff points to a portion of the Employee Handbook, the entire paragraph actually shows that daily operations are run at the local level by the subsidiary dealership:

### You/Your Dealership/Your Employer

You are employed by one of the many valued dealerships or auto repair facilities owned by Penske Automotive Group, Inc. While each of these franchises is separately incorporated as its own company, which employs its own local personnel such as yourself; each is a subsidiary of, and is owned by, Penske Automotive Group, Inc. Penske Automotive Group, Inc. serves as a resource for such matters as financial controls and reporting, manufacturer and lending relationships, legal and human resources expertise, and general operational oversight led by the Company's executive team. The dealerships and auto repair facilities, however, are managed and operated locally on a day-to-day basis by their respective management teams. This employee handbook has been adopted by your franchise employer and, for ease of reference, throughout this handbook your employing dealership or auto repair facility is referred to as "Penske Automotive Group" or the "Company". Please read it carefully to ensure your understanding of the basic rules, policies and procedures which relate to your employment and welcome aboard!

(Doc. 25 Ex. 5)

Second, plaintiff must demonstrate common management, common directors, and boards. This factor "typically involves a showing of shared officers or a number of overlapping board members." *Sampson v. Sisters of Mercy of Willard, Ohio,* 2015 WL

8

3953053 (N.D.Ohio June 29, 2015). *See also Hunter v. Ark Restaurants Corporation,* 3 F.Supp.2d 9 (D.D.C. 1998) ("[T]he Court focuses on the existence of common directors and officers who exercise control over the daily operations and employment practices of the entities.") In *Gill v. Wandres Corp.,* 2015 WL 998514 (E.D.Mich. March 6, 2015) (citations omitted), while the defendant conceded that there was some overlap in management/ownership of the two entities, the court recognized, "Some common management is not necessarily enough, however, to meet this factor."  Plaintiff herein contends there is "a significant overlap of management." (Doc. 25 at 10) Plaintiff points out that Dale Hodge sent his February 4, 2015 email to Michael Burns, who Hodge testified was "one of his bosses" and "Vice President of Cleveland"- the direct supervisor of the general managers of each of the dealerships. (Hodge depo. 58-59) Hodge copied Farrah Board (Primerano) on the email. She was Human Resource Manager in charge of the Cleveland area which included three dealerships. (Board depo. 5-8) Board testified that she reports to Tim Roop who is Vice President of Human Resources for the Central Region. (*Id.*)  Plaintiff, however, offers no evidence of shared officers or overlapping board members.  Plaintiff's evidence that there might be "some common management" is not enough.

      The third factor involves centralized control of labor relations and personnel.  The "control required" is "actual and active control of day-to-day labor practices." *Hunter,* 3 F.Supp.2d at 19. "The control of labor relations factor requires evidence that the parent company had authority to *hire* and *fire* the subsidiary's employees." *Sampson,* 2015 WL 3953053 (quoting *Swallows*). Defendant asserts that there is no evidence that Penske Automotive Group, Inc., or any of its employees, played any role in the alleged demotion or

9

termination of plaintiff.  In fact, plaintiff states he was terminated on February 2, 2015 by Dale Hodge, his supervisor at PAG Mentor A1. Notwithstanding, plaintiff points to the Employee Handbook which states in part:

### Nature of Employment- Employment at Will

> Employment with one of PAG's dealerships is voluntarily entered into, and you are free to resign at will at any time, with or without cause. Similarly, Penske Automotive Group, Inc. may terminate the employment relationship at will at any time, with or without notice or cause, so long as there is no violation of applicable federal or state law.

(Doc. 25 at Ex. 5) However, as set forth in other portions of the Employee Handbook, above, the dealerships are "managed and operated locally on a day-to-day basis by their respective management teams."  Further, the Handbook "has been adopted by your franchise employer and, for ease of reference, throughout this handbook your employing dealership or auto repair facility is referred to as 'Penske Automotive Group' for the 'Company.' " (*Id.*)  There is no evidence here that Penske Automotive Group, Inc. controlled labor relations at PAG Mentor A1.

Plaintiff asserts that the fourth prong is easily met as PAG Mentor A1 concedes that it is a wholly owned subsidiary of defendant. However, the fourth factor "requires proof that one of the entities is a sham."  *Sampson,* 2015 WL 3953053 (quoting *Swallows*).  *See also Schivelbein v. HCF Management,* 2015 WL 7430085 (N.D.Ohio Nov. 18, 2015) (citations omitted) ("If neither of the entities is a sham then the fourth test is not met.") There is no evidence of such.

For these reasons, plaintiff fails to show that the two entities are actually a single employer.  Because summary judgment is warranted on this basis, the Court declines to

address the merits of the arguments as to each of plaintiff's claims.

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


                                /s/ Patricia A Gaughan
                                PATRICIA A. GAUGHAN
                                United States District Judge

Dated: 9/19/16